**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Einstein Associates LLC, | No. CV-20-02184-PHX-JAT |
| Plaintiff, | **ORDER AND PERMANENT INJUNCTION** |
| v. | |
| DAP Industries LLC, | |
| Defendant. | |

Pending before the Court is Plaintiff Einstein Associates LLC's ("Plaintiff") Motion for Default Judgment. (Doc. 17). The Court now rules on the motion.

**I.   BACKGROUND**

Plaintiff is a Texas limited liability company that engages in the business of selling various goods and services, including pulse oximeters. (Doc. 1 at 2–3). Plaintiff owns the trademark ZACURATE, which it uses in conjunction with health monitoring devices, including pulse oximeters. (*Id.* at 3). Additionally, Plaintiff has invested significantly to advertise and promote goods featuring the trademark ZACURATE throughout the United States and on Amazon. (*Id.* at 3). Plaintiff alleges that DAP Industries LLC ("Defendant") is selling counterfeit pulse rate oximeters that bear the ZACURATE trademark. (*Id.* at 4). Accordingly, Plaintiff filed a complaint in this Court that sought a permanent injunction, damages, and attorney's fees. (*Id.* at 8–9). Service was completed on February 11, 2021, (Doc. 14), but Defendant never answered or otherwise responded to the complaint. The Clerk of Court entered default on March 11, 2021. (Doc. 16). Plaintiff now moves for entry

of default judgment. (Doc. 17).

## II. DEFAULT JUDGMENT

If a defendant fails to plead or otherwise defend an action after being properly served with a summons and complaint, a court may enter default judgment under Federal Rule of Civil Procedure ("Rule") 55. Rule 55 requires a "two-step process" that consists of (1) seeking the clerk's entry of default and (2) filing a motion for entry of default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Once the clerk has entered default under Rule 55(a), a court may, but is not required to, grant default judgment under Rule 55(b). *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam). In considering whether to grant default judgment, a court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72. When considering these factors, Defendant is deemed to have admitted all well-pleaded allegations in the complaint but does not admit allegations related to damages or those that do no more than "parrot" the elements of a claim. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

### a. Possibility of Prejudice

A possibility of prejudice exists when failure to enter default judgment denies a plaintiff judicial resolution of the claims presented or leaves the plaintiff without other recourse for recovery. *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Because Defendant has failed to answer the complaint, Plaintiff will likely be left without recourse if default judgment is not granted. Therefore, this factor weighs in favor of granting Plaintiff's motion.

### b. Merits of Plaintiff's Substantive Claim and Sufficiency of Complaint

"The second and third *Eitel* factors address the substantive merits of the claim and

the sufficiency of the complaint and are often analyzed together." *Joe Hand Promotions, Inc. v. Garcia Pacheco*, No. 18-cv-1973-BAS-KSC, 2019 WL 2232957, at *2 (S.D. Cal. May 23, 2019). These factors favor entering default judgment when, considering the complaint and relevant documentary evidence, a plaintiff "state[s] a claim on which [the plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also J & J Sports Prods., Inc. v. Molina*, No. CV15-0380 PHX DGC, 2015 WL 4396476, at *1 (D. Ariz. July 17, 2015) (considering affidavits attached to the motion for default judgment). The Court discusses Plaintiff's claims of trademark infringement, false designation of origin, and unfair competition in turn.

### i. Trademark Infringement, False Designation of Origin, and Unfair Competition

A person shall be liable in a civil action by a registrant owner of a mark if that person, without consent, uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The "test for whether trademark infringement has occurred is identical to the test for whether false designation of origin has occurred." *Adidas Am., Inc. v. Calmese*, 662 F. Supp. 2d 1294, 1298 (D. Or. 2009) (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008), *aff'd*, 489 F. App'x 177 (9th Cir. 2012). Likewise, "trademark infringement and unfair competition claims brought under the common law and the Lanham Act . . . share the same analysis." *3 Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC*, 2017 WL 4284570, *2 (D. Ariz. 2017). The key inquiry under a trademark infringement claim is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Jada Toys, Inc.*, 518 F.3d at 632 (citation and internal quotation marks omitted).

Plaintiff's allegations, taken as true, suggest a high likelihood of confusion. The Complaint alleges that Plaintiff is the owner of the trademark and designation ZACURATE

used in conjunction with health monitoring devices. (Doc. 1 ¶ 2). Defendant sells goods, including pulse rate oximeters, that bear the ZACURATE trademark. (Doc. 1 ¶ 7, 8, Ex. C). Additionally, Defendant's use of the ZACURATE trademark is likely to cause, and has actually caused, confusion amongst customers as to the quality and source of Plaintiff's goods. (Doc. 1 ¶ 14). Consequently, Plaintiff has been irreparably harmed by Defendant's actions. (*Id.* ¶ 17). Lastly, Defendant willfully and intentionally adopted and used marks confusingly similar to Plaintiff's trademarks to benefit from Plaintiff's goodwill. (*Id.* ¶ 18). Accordingly, the Court concludes that Plaintiff has sufficiently stated its claims for trademark infringement, false designation of origin, and unfair competition.

### c. Sum at Stake

"Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of [Defendant's] conduct." *Bankers Ins. Co. v. Old W. Bonding Co., LLC*, No. CV11-1804 PHX DGC, 2012 WL 2912912, at *2 (D. Ariz. July 16, 2012). Plaintiff requests injunctive relief against further infringement by Defendant and $38,688.30 for Defendant's profits from sale of the infringing goods, $160,808.15 for Plaintiff's lost revenue, and $15,490.25 for attorneys' fees and costs. (Doc. 17 at 9). In total, Plaintiff requests $644,960.10 in damages because of trebling pursuant to 15 U.S.C. § 1117. (*Id.*). Plaintiff's total requested monetary award of $644,960.10 would be consistent with other default judgment awards in the context of trademark infringement. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1060 (N.D. Cal. 2010) (holding that this factor weighed in favor of default judgment when a plaintiff requested damages in the range of $1,177,827.07 to $4,900,327.07 and a defendant engaged in willful infringement and did not respond to the allegations brought against it). Accordingly, this factor weighs in favor of default judgment.

### d. Possibility of Dispute

Considering the allegations that are now deemed admitted and the documentary evidence that Plaintiff submitted, "no genuine dispute of material facts would preclude granting Plaintiff's motion." *See PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

1177 (C.D. Cal. 2002). As discussed above, the allegations in Plaintiff's complaint, taken as true, establish the elements of Plaintiff's claims. Thus, this factor weighs in favor of granting Plaintiff's motion.

### e. Excusable Neglect

Under the sixth factor, the Court considers whether the default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F.Supp.2d. at 1177. Since the commencement of this lawsuit on November 13, 2020, Defendant has failed to appear. (Doc. 17 at 8). Defendant was served on February 11, 2021. (Doc. 14). An answer or other responsive pleading was due on March 4, 2021, and Defendant failed to answer or otherwise respond by the deadline and indeed has made no appearance through the date of this Order. (Doc. 17 at 8). No facts provided indicate that the default resulted from excusable neglect. Accordingly, this factor weighs in favor of granting Plaintiff's motion.

### f. Policy for Deciding on the Merits

Although it is true that "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, that is made "impractical, if not impossible," when a defendant fails to answer. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. Thus, this factor does not preclude entering default judgment against Defendant.

### g. Conclusion

On balance, the *Eitel* factors weigh in favor of granting Plaintiff's motion for default judgment. The Court will now consider Plaintiff's requests for injunctive relief, damages, and attorney's fees.

## III. REMEDIES

### a. Permanent Injunction

Plaintiff seeks to permanently enjoin Defendant from the following:

> i. infringing Plaintiff's ZACURATE trademark; ii. using, advertising, marketing or selling goods and/or services marked with the infringing ZACURATE trademark; iii. competing unfairly with plaintiff in any manner, including infringing any of plaintiff's trademark rights; and, iv. conspiring, encouraging, inducing, allowing, abetting, or assisting others

in performing any of the activities referred to in subparagraphs (i) - (ii) above.

(Doc. 1 at 8).

Under the Lanham Act, "the district court [has] the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir.2006) (citing 15 U.S.C. § 1116(a)). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987). Accordingly, for the Court to grant a permanent injunction, Plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) . . . considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Here, taking Plaintiff's allegations as true, Plaintiff has demonstrated actual irreparable harm. If an injunction were not granted, Plaintiff would suffer irreparable injury from the continuing damages to its goodwill and diversion of customers to Defendant's counterfeit goods. Additionally, the balance of hardships favors Plaintiff because Plaintiff will lose profits and goodwill without an injunction, and an injunction will only prohibit Defendant's infringing activity. Finally, an injunction is in the public interest when trademark infringement is proven because "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009). Accordingly, the Court

concludes that Plaintiff is entitled to a permanent injunction.

### b. Damages

The Lanham Act provides that, subject to the principles of equity, a trademark owner may "recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Additionally, the Court may enter judgment for any sum up to three times the amount found as actual damages. *Id.* Here, Plaintiff seeks to recover actual damages in the amount of $199,496.45, including $38,688.30 in Defendant's profits and $160,808.15 in lost revenue, which it asserts should be trebled according to 15 U.S.C. § 1117(b). (Doc. 17 at 9).[1]

To be awarded § 1117 damages, "[a] plaintiff must prove both the fact and amount of damage." *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 951 (D. Ariz. 2013). "As a general rule, damages which result from a tort must be established with reasonable certainty. . . . [D]amages are not rendered uncertain because they cannot be calculated with absolute exactness, yet, a reasonable basis for computation must exist." *Id.* (citation omitted). Furthermore, courts have accepted less precise estimates of damages where a defendant frustrates the discovery of a precise amount by defaulting in the action. *See Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 662 (S.D. Cal. 1997).

With respect to Defendant's profits, Plaintiff is required to prove only sales. 15 U.S.C. 1117(a). In a declaration, Chiat Koo Lim avowed that Defendant sold $38,688.30 of counterfeit goods. (Doc. 17-1 ¶ 4). Chiat Koo Lim also provides a spreadsheet that estimates the amount of Plaintiff's profits lost and Defendant's profits gained in the period Defendant's counterfeit product was listed on Amazon. (*Id.* Ex. A). Plaintiff's spreadsheet calculates the amount of profits lost from a lower number of units ordered while Defendant's cheaper product was listed on Amazon. (*Id.*). Given the fact that Defendant has frustrated Plaintiff's ability to determine with any precision the amount of its sales by

---

[1] Plaintiff also requests attorney's fees and costs of $15,490.25 be included in the amount it wishes to be trebled under 15 U.S.C. § 1117(b). (Doc. 17 at 9). Section 1117(b), however, does not provide for this type of remedy. 15 U.S.C. § 1117(b) ("[T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, *together with a* reasonable attorney's fee." (emphasis added)).

not responding to Plaintiff, the Court concludes that Plaintiff has established $38,688.30 as an appropriate measure of Defendant's profits. Likewise, the Court determines that Plaintiff's exhibit (*id.*) establishes $160,808.15 as an appropriate measure of Plaintiff's lost profits.

"In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title . . . in a case involving use of a counterfeit mark or designation . . . the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages." 15 U.S.C. § 1117(b). The Court may only enter judgment for three times such profit or damages if the violation consists of "intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(b)(1). Taking as true Plaintiff's allegations that Defendant's infringement is willful, the Court trebles Plaintiff's damages and will award Plaintiff $598,489.35 in damages.

### c. Attorney's Fees

The Lanham Act authorizes courts to award "reasonable attorney fees to the prevailing party" in "exceptional" trademark infringement actions. 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

When applying the *Octane Fitness* analysis, courts commonly find that willful infringement, in conjunction with non-participation in litigation, makes a case exceptional. *Trident Inv. Partners Inc. v. Evans*, No. CV-20-01848-PHX-DWL, 2021 WL 75826, at *8 (D. Ariz. Jan. 8, 2021); *ADG Concerns, Inc. v. Tsalevich LLC*, 2018 WL 4241967, *13 (N.D. Cal. 2018) (collecting cases). Plaintiff has alleged that Defendant's infringement is willful because Defendant's products "comprise a preprinted label with [the] infringing

ZACURATE trademark hastily added to the counterfeit product's packaging." (Doc. 1 ¶ 9). By not appearing in this case, Defendant has admitted that it has committed willful infringement. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (holding that factual allegations on the complaint, including allegations of willful infringement, are deemed true upon default). Defendant's willful infringement, along with its failure to participate in this litigation, entitles Plaintiff to reasonable attorney's fees.

However, although Plaintiff has established that it is entitled to attorney's fees, the Court will require compliance with LRCiv 54.2 to assist in determining the reasonableness of the attorney's fees requested. *See generally McDermott v. Perfection Collection LLC*, No. CV-20-00539-PHX-JAT, 2021 WL 1424089, at *6 (D. Ariz. Apr. 15, 2021). The Local Rule requires that the supporting memorandum for a request for attorney's fees include an affidavit that describes the relevant background of each attorney for whom fees are claimed, the reasonableness of the rate, and the reasonableness of the time spent and expenses occurred. LRCiv 54.2(d)(4)(A)–(C). Furthermore, "[t]he party seeking an award of fees **must adequately describe the services rendered** so that the reasonableness of the charge can be evaluated." LRCiv 54.2(e)(2) (emphasis added). Plaintiff's request for attorneys' fees will be denied without prejudice to a timely request that complies with LRCiv 54.2.

### IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 17) is **GRANTED.** The Clerk of the Court shall enter Judgment for Plaintiff Einstein Associates LLC and against Defendant DAP Industries LLC in the amount of $598,489.35.

**IT IS FURTHER ORDERED** that Plaintiff may submit a motion for attorney's fees compliant with the Local Rules within 7 days of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's request for a permanent injunction (Doc. 17) is **GRANTED.** Defendant is permanently enjoined from the following:

(i) infringing the ZACURATE trademark;

(ii) using, advertising, marketing or selling any products bearing the ZACURATE trademark or which infringe Einstein's trademark rights related to the ZACURATE trademark;

(iii) competing unfairly with Einstein in any manner, including infringing any of its trademark rights related to the ZACURATE trademark; and,

(iv) conspiring, encouraging, inducing, allowing, abetting, or assisting others in performing any of the activities referred to in subparagraphs (i)–(ii) above.

Dated this 19th day of July, 2021.

James A. Teilborg
Senior United States District Judge